**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 24-2191-JFW(PDx)** | Date: July 1, 2025 |
| Title: | Pulte Home Company, LLC -v- HDI Global Specialty SE, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING PULTE HOME COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT AGAINST UNITED SPECIALTY INSURANCE COMPANY [filed 4/30/25; Docket No. 206]

On April 30, 2025, Plaintiff Pulte Home Company, LLC, Centex Homes, and Centex Real Estate Company, LLC (collectively, "Pulte") filed a Motion for Summary Judgment Against United Specialty Insurance Company ("Motion"). On May 23, 2025, Defendant United Specialty Insurance Company ("USIC") filed its Opposition. On June 2, 2025, Pulte filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's June 16, 2025 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural History[1]**

    **A.    Factual Background**

Pulte is a homebuilder that developed a residential project known as the Avelina community

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

in Perris, California (the "Project"). Pulte did not perform any actual construction work on the Project and, instead, hired contractors to perform that work. PSLQ, Inc., d/b/a GreenBee Services ("GreenBee") was one of those contractors. Specifically, GreenBee installed concrete flatwork and foundation systems for the homes at the Project.

1. **The *Abby* Matter**

In October of 2019, homeowners in the Avelina community ("Homeowners") served Notices of Claim pursuant to California Civil Code § 910 ("Notices"), notifying Pulte of purported property damage as a result of defective construction, and initiating the pre-litigation "right to repair" procedure under California Civil Code § 895, *et seq*. On October 1, 2020, the claims ripened into a civil lawsuit that the Homeowners filed against Pulte, entitled *Lorne Abby, et al., v. Centex Homes, et al.*, Riverside County Superior Court ("RCSC") Case No. RIC2003924 (the "*Abby* Matter"). In their complaint, the Homeowners alleged extensive and significant property damage, including property damage caused by GreenBee's work. Specifically, the Homeowners alleged excessive water intrusion and other damage caused by GreenBee's improper installation and construction of concrete flatwork, interior slabs, foundation systems, and foundation anchors. In total, fifty-seven Homeowners asserted claims alleging property damage as a result of defective construction, including GreenBee's work. The Homeowners moved to compel arbitration, and the state court ordered the parties to arbitrate on an individual, home-by-home basis and stayed the civil action pending arbitration. Four homeowners arbitrated their claims. Thereafter, Pulte settled with the remaining fifty-three homeowners. After the stay in the *Abby* Matter was lifted, Pulte filed a cross-complaint against GreenBee and other subcontractors.

2. **The USCIS Policies**

The contracts between GreenBee and Pulte required GreenBee to obtain commercial general liability insurance policies and to name Pulte as an additional insured on those policies. As a result, GreenBee procured the following liability policies from USIC: (1) effective from April 16, 2014 to April 16, 2015 (Policy Number BTO1416789); (2) effective from April 16, 2015 to April 16, 2016 (Policy Number BTO1527625); and (3) effective from April 16, 2018 to April 16, 2019 (Policy Number DBRUS000304-00) (collectively, "USIC Policies"). GreenBee provided Pulte with policy endorsements and Certificates of Insurance identifying Pulte as an additional insured on the USIC Policies.

The Insuring Agreement in the USIC Policies provides that "[USIC] will pay those sums that [Pulte] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies," provided the 'property damage' is caused by an occurrence." The Insuring Agreement also states that "[USIC] will have the right and duty to defend the insured against any 'suit' seeking those damages." The USIC Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." In addition, "Products-completed operations hazard" is defined as all "'property damage' . . . arising out of 'your product' or 'your work.'" The USIC Policies define "property damage" as either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured."

The USIC Policies include an Additional Insured Endorsement naming PulteGroup, Inc. and its subsidiaries and affiliates (*i.e*., Pulte) as additional insureds for "all work located in the State of

California."  The Endorsement states that the USIC Policies provide "primary and noncontributory" coverage to Pulte for its "liability arising out of [GreenBee's] work."

On December 20, 2019, Pulte asked USIC to defend and indemnify it against the *Abby* Matter.  On February 15, 2021, USIC agreed to defend Pulte under the 2014-2016 Policies.

### B. Procedural Background

On March 18, 2024, Pulte filed this action against USIC and seventeen other insurers[2], alleging claims for: (1) declaratory judgment; (2) breach of contract – duty to defend; and (3) breach of contract – duty to indemnify.  On June 6, 2024, USIC filed its Answer. On January 29, 2025, USIC filed a Crossclaim against Contractors Insurance Company of North America, Inc. ("CICNA"), which is a subsidiary of PulteGroup, Inc., alleging claims for: (1) declaratory relief; (2) equitable contribution; and (3) equitable indemnity.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial.  *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case."  *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  "This requires evidence, not speculation."  *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999).  The Court must assume the truth of direct evidence set forth by the opposing party.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).  However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom.  *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).  Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party."

---

[2]  The Court has limited the factual and procedural background to the relevant facts and events involving UCIS only, and not the other seventeen insurers.

*American International Group*, 926 F.2d at 836-37.  In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

III.     **Discussion**

In its Motion, Pulte seeks summary judgment on its first cause of action for declaratory judgment.  Specifically, Pulte asks the Court to find that USIC owes a duty to fully defend Pulte in the *Abby* Matter.  Pulte also asks the Court to find that, pursuant to its duty to defend, USIC is contractually obligated to fully reimburse Pulte for its reasonable and necessary attorneys' fees and costs and that the costs and fees it incurred in the *Abby* Matter are reasonable and necessary.  In its Opposition, USIC argues that Pulte's Motion should be denied because there are numerous disputes of material facts, including whether USIC owes Pulte a duty to defend, whether Pulte is entitled to reimbursement of its attorneys' fees and costs, and the reasonableness and necessity of those fees and costs.  USIC also argues that Pulte's purported *Armstrong* election[3] is legally and factually ineffective.

### A.     The Legal Standard Regarding An Insurer's Duty to Defend

An insurer's "duty to defend is broader than its duty to indemnify."  *Buss v. Superior Court*, 16 Cal.4th 35, 46 (1997).  An "insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed."  *Id.*  It arises as soon as tender is made and it is discharged when the action is concluded or if it is determined that a claim cannot be covered.  *Id.*; *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf").  The duty to defend "requires the incurring of reasonable and necessary [defense] costs" on the part of the insurer.  *Aerojet–General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 58 (1977).

"If the insurer is obliged to take up the defense of its insured, it must do so as soon as possible, both to protect the interests of the insured, and to limit its own exposure to loss . . . [T]he duty to defend must be assessed at the outset of the case.  It follows that a belated offer to pay the costs of defense may mitigate damages but will not cure the initial breach of duty."  *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App.4th 847, 881 (2000) (internal citations and quotations omitted).  "The general measure of damages for breach of duty to defend consists of the insured's cost of defense in the underlying action, including attorney fees."  *Intergulf Development v. Superior Court*, 183 Cal. App. 4th 16, 20 (2010).

---

[3] USIC uses the term "*Armstrong* election" to refer to the decision in *Armstrong World Industries, Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal.App.4th 1 (1996), which is generally understood to provide insureds in matters involving continuous losses the right to select a particular policy period for purposes of determining the amount of the deductible and policy limits that apply.  The California Supreme Court in *Montrose Chemical Corp. of California v. Superior Court*, 9 Cal.5th 215 (2020) ("*Montrose III*"), explained that the insured's election does not preclude later reallocation proceedings between or among the insurance carriers.

In *Buss*, the California Supreme Court announced the principle that in a "mixed" action – an action including both potentially covered claims and potentially uncovered claims – the insurer must defend the entire action so as not to prejudice the insured, but the insurer could later seek reimbursement for claims that were never potentially covered. *Buss*, 16 Cal. 4th at 49 ("To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely"). The principle announced in *Buss* also applies in actions where the insured has coverage from more than one insurer. *See* Croskey, Heeseman, Ehrlick & Klee, Cal. Prac. Guide: Insurance Litigation (The Rutter Group 2024), at ¶ 7:677.1 ("[W]hile each of the insurers 'on the risk' has a separate and independent duty to defend the action in its entirety, each also has 'a corresponding right of some sort to require the others to share in discharging the duty or at least contribute to its costs'") (*quoting Aerojet*, 17 Cal.4th at 70); *see also Armstrong*, 45 Cal. App. 4th at 52 ("[A] policyholder may obtain full indemnification and defense from one insurer, leaving the targeted insurer to seek contribution from other insurers covering the same loss.") (quotations omitted). Indeed, an insurer's failure to pay the full amount of reasonable and necessary defense costs based on the contention that there may be other coverage available constitutes a breach of the duty to defend. *See Pepsi–Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc.*, 2010 WL 10875087, *7 (C.D.Cal. Dec. 28, 2010) (internal citations omitted) ("The reasoning behind this rule is to protect the insured. In finding that the duty to defend is an independent and bargained-for benefit under each applicable insurance contract when multiple insurers cover the same risk, California courts have left battles of allocation of costs to separate contribution suits between liability insurers, rather than subjecting the insured to additional litigation"); *see also Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.,* 130 Cal. App.4th 1078, 1088 (2005) (holding that the fact that "one insurer may owe a duty to provide a defense will not excuse a second insurer's failure to honor its separate and independent contractual obligation"); *Haskel, Inc. v. Sup. Ct.*, 33 Cal. App. 4th 963, 976 n. 9 (1995) (holding that "we will treat Hartford's acceptance of a 13 percent share of the defense burden as the equivalent of a defense denial. Such a unilateral limitation of its responsibility is not justified. If it owes any defense burden it must be fully borne . . . with allocations of that burden among other responsible parties to be determined later") (internal citation omitted). In addition, it is well-established that failing to timely pay independent counsel is grounds for a breach of an insurer's duty to defend. *See, e.g., Pepsi-Cola*, 2010 WL 10875087, at *5 (finding insurer's delayed response to reimbursement request a breach of the duty to defend under California law).

  **B.**  **USIC's Duty to Defend Pulte in the *Abby* Matter**

In this case, despite USIC's arguments to the contrary, the Court concludes that USIC agreed to defend Pulte in the *Abby* Matter and, as a result, owes a duty to fully defend Pulte in the *Abby* Matter. *See, e.g., County of San Bernardino v. Pacific Indem. Co.*, 56 Cal. App.4th 666, 689-691 (1997) (holding that an insurer has a duty to pay all of its insured's defense costs, not simply a "share"); *Armstrong*, 45 Cal. App.4th at 105 (holding that insurers' right to apportion defense costs among multiple policies does not reduce their respective obligation to their insured); *Aerojet*, 17 Cal.4th at 69 (holding that each insurer's duty to defend is separate and independent); *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App.4th 1078, 1088 (2005) (holding that the fact that "one insurer may owe a duty to provide a defense will not excuse a second insurer's failure to honor its separate and independent contractual obligation"). It is undisputed that, on December 20, 2019, Pulte sent a letter tendering its defense and indemnity to USIC with respect to the *Abby* Matter, stating, in relevant part, that "[a]s you know, Pulte is entitled to an

immediate, 100% complete and conflict-free defense from United Specialty Insurance" and requested USIC to contact Pulte "at your earliest convenience to discuss our tender and United Specialty Insurance's fulfillment of its defense and indemnification obligations to Pulte." In response, on February 15, 2021, USIC sent Pulte a letter agreeing to defend Pulte under the 2014-2016 Policies, stating, in relevant part, that "[t]he purpose of this letter is to inform you that based on the information provided to date, USIC has agreed to participate in the defense of Pulte under a reservation of rights." In addition, USIC confirmed its agreement to defend Pulte in its Answer, filed June 6, 2025 (Docket No. 113), where it stated that "USIC admits that USIC agreed to participate in Pulte's defense under the policies it issued to GreenBee." Answer, ¶ 139. Indeed, in the Declaration of Marianne Sparks in Support of United Specialty Insurance Company's Opposition to Pulte Home Company, LLC's Motion for Summary Judgment ("Sparks Declaration"), Marianne Sparks ("Sparks"), an employee of National Claim Services, LLC which is the third-party claims administrator for USIC with respect to the Policies, admitted that "USIC accepted Pulte's [tender] under the USIC Policies." Sparks Declaration, ¶ 3.

In addition, it is clear from the nature of the claims alleged in the *Abby* Matter that USIC owes Pulte a duty to defend. *See, e.g., Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993) (holding that a determination whether an insurer has a duty to defend is initially made by comparing the allegations of the underlying complaint with the terms of the policy); *see also Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966) (holding that the defense obligation arises when third parties seek damages against an insured that are "potentially within" the coverage of the policy). In determining if a duty to defend is triggered, the allegations of the complaint in the underlying action are broadly construed in favor of coverage. *Id.* at 276-77. Indeed, "the insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove it cannot." *Montrose*, 6 Cal. 4th at 300; *see also Amato v. Mercury Casualty Co.*, 18 Cal. App.4th 1784, 1792 (1993) (holding that an insurance carrier's defense obligation does not depend on its insured submitting evidence admissible in a court of law, but, instead, an insured may create a potential for coverage simply by communicating facts to the insurer that, if true, would create a potential for coverage). In this case, it is undisputed that, in the *Abby* Matter, the Homeowners sued Pulte, alleging property damage potentially caused by GreenBee's work on their homes and that GreenBee had, as required, obtained the Policies naming Pulte as an additional insured. As a result, USIC's duty to defend was triggered by the filing of the complaint in the *Abby* Matter.

Finally, the Court finds unpersuasive USIC's argument that Pulte's selection of its own defense counsel, Newmeyer & Dillion, somehow excused USIC's agreement to participate in or provide Pulte a defense. In acknowledging its duty to defend, USIC never objected to the selection of Newmeyer & Dillion as Pulte's counsel, and, instead, merely reserved its right to appoint other defense counsel in the future. Specifically, in its February 15, 2021 letter to Pulte, USIC stated that "USIC reserves the right to appoint separate counsel of its choice to defend Pulte should it choose to do so, or if problems arise in the future." Despite this reservation, USIC never appointed or attempted to appoint separate defense counsel or otherwise raised any concern over Pulte's selection of or representation by Newmeyer & Dillion.

Accordingly, the Court concludes that USIC owes Pulte a duty to fully and completely defend Pulte in the *Abby* Matter.

### C. Pulte's Attorneys' Fees and Costs in the *Abby* Matter Are Reasonable and Necessary

In its Motion, Pulte seeks reimbursement from USIC of $1,976,655.07 in unreimbursed attorneys' fees and costs. USIC argues that Pulte has failed to establish that those fees and costs are reasonable and necessary.

In this case, the Court finds unpersuasive USIC's argument that Pulte has failed to demonstrate that the attorneys' fees and costs are reasonable and necessary. It is undisputed that between August 30, 2022, and October 2, 2024, USIC was provided with copies of all defense invoices related to the *Abby* Matter, along with funding request letters, and that USIC never objected to the reasonableness or necessity of the fees and costs charged by Newmeyer & Dillion. Instead, the evidence submitted by USIC in support of its argument that it objected to the reasonableness and necessity of the fees and costs reveals that it had only objected to the fees and costs charged by Payne & Fears (which are no longer at issue)[4], not Newmeyer & Dillion. The Court also finds unpersuasive USIC's argument that the Motion should be denied because Pulte failed to submit the invoices supporting the $1,976,655.07 in unreimbursed attorneys' fees and costs to the Court. It is undisputed that USIC has been provided with, had full access to, and had an opportunity to review all the invoices and billing statements during the course of litigation, and it has never raised any objection to the fees and costs charged by Newmeyer & Dillion. In addition, USIC does not argue that the amount of the attorneys' fees and costs are different than what USIC reviewed during the course of the litigation.

Similarly, the Court finds unpersuasive USIC's argument that Pulte has violated a condition of coverage in the Policies because Pulte made voluntary payments to Newmeyer & Dillion. Section IV(2)(d) of the Policies provides that "[n]o insured will, except at insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." According to USIC, Pulte has failed to present any evidence to establish that USIC consented to Pulte's voluntary payment of attorneys' fees and costs to Newmeyer & Dillion, and, as a result, Pulte is barred from recovering those fees and costs. However, a voluntary payment provision such as Section IV(2)(d) is generally not a bar to the recovery of defense costs reasonably incurred where the insured is faced with a situation requiring an immediate response to protect its legal interests. *See, e.g., Fiorito v. Superior Court*, 226 Cal. App.3d 433, 440 (1990); *see also Shell Oil Co. v. National Union Fire Ins. Co.*, 44 Cal. App.4th 1633, 1648 (1996) ("Whether this [voluntary payment] provision embraces expenses of defense is unclear" and holding that any

---

[4] According to Pulte, it incurred $2,463,328.31 in attorneys' fees and costs defending the *Abby* Matter. Insurers defending Pulte reimbursed Pulte $329,854.30, which reflects $132,351.00 in refunds from AAA following settlement and dismissal of the Homeowners' arbitrations in the *Abby* Matter, and AAA refunded an additional $3,071.03. As a result, Pulte originally sought to recover $2,134,769.45 in unreimbursed attorneys' fees and costs from USIC. However, USIC argued in its Opposition that it had objected to paying attorneys' fees and costs incurred by Payne & Fears, LLP, Pulte's counsel in this action, because those fees and costs were not incurred defending the *Abby* Matter. Although Pulte disagrees with USIC's argument, it has agreed to limit the amount of fees and costs it is seeking to the $1,976,655.07 charged by Newmeyer & Dillion in defending the *Abby* Matter.

ambiguity would be "resolved against" the insurer).  In this case, USIC failed to respond to Pulte's December 20, 2019 tender of defense letter asking USIC to defend and indemnify it against the *Abby* Matter until February 15, 2021.  As a result, Pulte was forced to protect its interest by defending itself – at its own expense – against the claims during the nearly fourteen-month delay before USIC decided to provide Pulte a defense.  In addition, once USIC agreed to participate in the defense of Pulte in the *Abby* Matter, USIC never raised any issue regarding the voluntary payment provision.  In fact, in its February 15, 2021 letter to Pulte agreeing to participate in the defense of the *Abby* Matter, USIC makes no reference to Section IV(2)(d) and, instead, merely states that "[a]ll request for payment of defense amounts incurred in this matter must be submitted to USIC Litigation Management for review and approval."  Moreover, during the entire two years it participated in Pulte's defense of the *Abby* Matter, USIC never objected to or claimed that Pulte's payment of the Newmeyer & Dillion invoices constituted a breach of the voluntary payment provision and, instead, paid its portion of the invoices it received from Pulte without objection.

      Accordingly, the Court concludes that Pulte's $1,976,655.07 in attorneys' fees and costs incurred in the defense of the *Abby* Matter are reasonable and necessary, and that Pulte is entitled to full reimbursement from USIC of the $1,976,655.07 in attorneys' fees and costs.

## IV.    Conclusion

      For all the foregoing reasons, Pulte's Motion is **GRANTED**, and Pulte is entitled to judgment on its first cause of action for declaratory judgment.  Specifically, the Court finds that: (1) USIC owed a duty to fully and completely defend Pulte in the *Abby* Matter; (2) USIC is obligated to fully reimburse Pulte for its reasonable and necessary attorneys' fees and costs; and (3) Pulte's $1,976,655.07 in attorneys' fees and costs incurred in the *Abby* Matter are reasonable and necessary.

      IT IS SO ORDERED.